**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BOARD OF DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN; BOARD OF DIRECTORS OF THE MOTION PICTURE INDUSTRY INDIVIDUAL ACCOUNT PLAN; BOARD OF DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN,<br><br>        Plaintiffs,<br><br>  v.<br><br>THE REVOLVER FILM COMPANY U.S.A. LIMITED,<br><br>        Defendant. | CV 16-5295-RSWL-Ex<br><br>**ORDER re: Plaintiffs' Motion for Entry of Default Judgment** [30] |

Currently before the Court is Plaintiffs Board of Directors of the Motion Picture Industry Pension Plan; Board of Directors of the Motion Picture Industry Individual Account Plan; and Board of Directors of the Motion Picture Industry Health Plan's ("Plaintiffs" or the "Plans") Motion for Entry of Default Judgment

1

("Motion" or "Motion for Default Judgment") against Defendant The Revolver Film Company U.S.A. Limited ("Defendant") [30]. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Plaintiffs' Motion and enters default judgment as to all claims in the Complaint [1].

## I. BACKGROUND

### A.   Factual Background

Plaintiffs are the Board of Directors of the Motion Picture Industry Pension Plan, the Motion Picture Industry Individual Account Plan, and the Motion Picture Industry Health Plan. Compl. ¶ 3, ECF No. 1. The Plans were established pursuant to collective bargaining agreements between entertainment industry employers and IATSE.[1]   Id. at ¶ 4.

The Plans are employee welfare benefit and pension plans within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") § 3(1)(29 U.S.C. § 1002(1)) and § (3)(2)(29 U.S.C. § 1002(2)), and are multi-employer plans within the meaning of ERISA § 3(37)(A)(29 U.S.C. § 1002(37)(A)) and § 515 (29 U.S.C. § 1145).   Id.   The Plans are subject to the provisions of section 302(c)(5)(29 U.S.C. § 186(c)(5)) of the Labor-Management Relations Act of 1947 ("LMRA").   Id.

---

[1] International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada is an unincorporated labor organization.   Id.

at ¶ 3.

Defendant is a Delaware corporation authorized to transact business within California.  Id. at ¶ 5.  It is currently under California Franchise Tax Board ("FTB") suspension and "Void, AR's or Tax Delinquent" status with the Delaware Division of Corporations.  Id.

Defendant signed Consent Agreements with the IATSE, agreeing to be bound by the 2003 Music Video Production Agreement and successor agreements.  Defendant also signed Consent Agreements with the Studio Transportation Drivers Local 399 ("Local 399"), agreeing to be bound by the Teamsters Music Video Agreement and subsequent extensions.  Id. at ¶¶ 7, 9, Ex. 1.

Pursuant to these agreements, Defendant executed IATSE and Local 399 Trust Acceptances, agreeing to be bound by all terms and conditions of the Trust Agreements establishing the Plans ("Trust Agreements"). Id. at ¶ 10, Ex. 4.  The Trust Agreements obligate Defendant to submit a report and pay contributions on a weekly basis to the Plans for each hour worked or guaranteed to employees, including straight-time and overtime hours.  Id. at ¶ 12.

The Trust Agreements provide payment procedures for delinquent contributions to the Plans.  Contributions are delinquent if they are not received within five days from the date such contributions become due.  Id.; Decl. of Chris Tashchyan ("Tashchyan Decl.") ¶ 8A; Ex.

3

5, pp. 35-36; Ex. 6, pp. 42-44; Ex. 7, pp. 48-49, ECF Nos. 30-2, 30-7. The Trust Agreements provide for the assessment of interest on delinquent contributions at the rate of one percent (1%) per month, commencing when payment was due and continuing to the date when payment is made. Compl. ¶ 14; Tashchyan Decl. ¶ 8E; Ex. 5, p. 36; Ex. 6, p. 42; Ex. 7, p. 49. In addition, the Trust Agreements require payment of liquidated damages for delinquent contributions.[2] Compl. ¶ 13; Tashchyan Decl. ¶ 8F; Ex. 5, pp. 36-37; Ex. 6, p. 36; Ex. 7, pp. 49-50. Finally, in the event of a delinquency, employers are liable for all expenses of collection/enforcement, including all costs, reasonable accountant's fees, auditor's fees, and attorney's fees. Compl. ¶ 14; Tashchyan Decl. ¶¶ 8C-D; Ex. 5, p. 37; Ex. 6, p. 45; Ex. 7, pp. 50, 52. Should an audit reveal a delinquency or underpayment, the employer shall bear the costs of the audit. Tashchyan Decl. ¶ 8C; Ex. 5, p. 39; Ex. 6, p. 45; Ex. 7, p. 52.

On August 17, 2012, Plaintiffs completed an audit of Defendant's records which revealed that, from the period of January 4, 2004 to April 5, 2008, Defendant failed to report and pay contributions to the Plans totaling $12,066.19. Compl. ¶¶ 15-16; Tashchyan Decl. ¶ 9, Ex. 8.

---

[2] The amount of liquidated damages is the greater of either: (1) twenty percent (20%) of all unpaid contributions; or (2) the amount of interest due on the date when payment is made, in addition to interest due on the unpaid contributions. Id.

4

**B.  Procedural Background**

Plaintiffs filed a Complaint against Defendant on July 18, 2016, alleging two claims: (1) breach of the contract for failure to report and pay contributions to the Plans from January 4, 2004 to April 5, 2008 pursuant to the Trust Agreements; and (2) violation of ERISA § 515 (29 U.S.C. § 1145) for failure to accurately report and pay contributions to the Plans. Compl. ¶¶ 15, 16, 23.

Plaintiffs seek the following damages from Defendant: (1) $12,066.19 for unpaid contributions from January 4, 2004 to April 5, 2008; (2) $14,459.91 interest (through May 31, 2017); (3) $14,459.91 liquidated damages (through May 31, 2017); (4) audit fees for the August 17, 2012 audit totaling $6,255.00; (5) attorneys' fees of $8,757.50; and (6) litigation costs of $825.50.

Plaintiffs were unable to effect service of process on Defendant's listed address on August 1, 2016, as the address was a rental house and the current occupant did not know Defendant.  Decl. of Elizabeth Rosenfeld re OSC re Failure to Prosecute ("First Rosenfeld Decl.") Ex. 1, ECF. No. 12-1.

Plaintiffs repeatedly attempted to serve Defendant at business addresses in California and Delaware.  On September 7, 2016, Plaintiffs were unable to effect service of process in Delaware because The Corporation Trust Company, Defendant's agent for service of process

listed with the Delaware Division of Corporations, had not been an active agent for service of process since March 1, 2009.  <u>Id.</u> at Ex. 2.  Plaintiffs made two additional attempts to serve Defendant at its last-known business address in October 2016.  <u>Id.</u> at Ex. 3. Both attempts failed because Defendant apparently moved out six months prior.  <u>Id.</u>

On October 27, 2016, the Court granted Plaintiffs a 60-day extension to complete service of the Summons and Complaint [14].  Plaintiffs were still unable to locate Defendant or its agent for service of process.  The Court allowed Plaintiffs to effect service of process by personally serving the California Secretary of State, pursuant to California Corporations Code §§ 2111(a), 2114(c) [17].  Plaintiffs completed service of the Summons via the California Secretary of State on December 28, 2016 [18].  Defendant did not file an answer, which was due on January 18, 2017 [18].

Plaintiffs requested that the Clerk enter default against Defendant, which the Clerk did on February 1, 2017 [19, 20].  On May 5, 2017, the Court denied Defendant's Motion to Set Aside Default [29]. Plaintiffs filed this Motion for Default Judgment on June 9, 2017 [30].  Defendant did not respond.

## II. DISCUSSION

### A. <u>Legal Standard</u>

The granting of default judgment is within the discretion of the district court.  <u>Aldabe v. Aldabe</u>,

616 F.2d 1089, 1092 (9th Cir. 1980); see Fed. R. Civ. P. 55. Procedural and substantive requirements must be satisfied.

Procedurally, the requirements set forth in Federal Rules of Civil Procedure 54(c) and 55(b), and Local Rule 55-1 must be met. See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1006 (C.D. Cal 2014). Local Rule 55-1 provides: "When an application is made to the Court for a default judgment, the application shall be accompanied by a declaration in compliance with F.R.Civ.P. 55(b)(1) and/or (2) and include the following: (a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Service Members Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and (e) That notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2)." L.R. 55-1.

Courts should also consider the following factors in determining whether to grant a motion for default judgment: "(1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts,

7

(6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

If the court determines that the defendant is in default, "'the factual allegations of the complaint, other than those relating to damages, are taken as true.'" Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977)). Additionally, "[w]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).

If the Court determines that the allegations in the complaint are sufficient to establish liability, the plaintiff must provide proof of all damages sought in the complaint, and the Court must determine the "amount and character" of the relief that should be awarded. Vogel, 992 F. Supp. 2d at 1005-06. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**B.  Analysis**

   1.  Jurisdiction and Service of Process

In considering whether to enter default judgment against Defendant, the Court must first determine

8

whether it has jurisdiction over the subject matter and
the parties to the case. In re Tuli, 172 F.3d at 712.

The Court has subject matter jurisdiction over this
action because ERISA § 502(e)(1)(29 U.S.C. §
1132(e)(1)) gives district courts "exclusive
jurisdiction" over ERISA actions brought by plan
fiduciaries like Plaintiffs. Compl. ¶ 4; Cripps v.
Life Ins. Co. of Am., 980 F.2d 1261, 1265 (9th Cir.
1992)(section 1132 "expressly authorize[s]" plan
fiduciaries "to bring claims in federal court").

The Court also has personal jurisdiction because
fiduciaries may bring an ERISA enforcement action
"where the plan is administered, where the breach took
place, or where a defendant resides or may be found,
and process may be served in any other district where a
defendant resides or may be found." ERISA § 502(e)(2)
(29 U.S.C. § 1132(e)(2)). Here, the Plans are
administered in Studio City, California, so the Court
can exercise personal jurisdiction over Defendant, who
is incorporated in Delaware. Compl. ¶ 4; Tr. of ILWU-
PMA Pension Plan v. Coates, No. C-11-3998 EMC, 2013 WL
556800, at *4 (N.D. Cal. Feb. 12, 2013)(per section
1132(e)(2), "a court may exercise personal jurisdiction
over a defendant anywhere in the United States,
regardless of the state in which the court sits").
Even under traditional personal jurisdiction
principles, the Court likely has personal jurisdiction
over Defendant because Defendant was formerly

9

authorized to transact business within the State of California. Compl. ¶ 5.

Service of process is also satisfied. A corporation may be served pursuant to California state law. See Fed. R. Civ. P. 4(h)(1)(A). Per California law, when the agent for service of process cannot be found, then service may be affected by the California Secretary of State. Cal. Corp. Code § 2111. After multiple attempts to serve Defendant at various locations including Defendant's listed address, Defendant's business addresses in California and Delaware, and on Defendant's agent for service of process, Plaintiffs completed service of the Summons and Complaint via the California Secretary of State on December 28, 2016 [18].

2. Procedural Requirements

Plaintiffs have met the procedural requirements for default judgment pursuant to Federal Rules of Civil Procedure ("FRCP" or "Rule") 55 and Central District Local Rule 55-1.[3] Under Rule 55(a), the Clerk properly entered default against Defendant on February 1, 2017 [20]. Plaintiffs moved pursuant to Rule 55(b) for entry of default judgment on June 9, 2017 [30].

---

[3] Local Rule 55-1 sets forth additional requirements in an application for default judgment: (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) notice has been served on the defaulting party.

Plaintiffs have also satisfied the Local Rule 55-1 requirements. The Clerk of Court entered default against Defendant as to the entire Complaint on February 1, 2017 [20]. Defendant is not an infant, incompetent person, or exempted under the Soldiers' and Sailors' Civil Relief Act of 1940, the predecessor to the Servicemembers Civil Relief Act. Ntc. of Mot. for Default J. ("Ntc.") 1:12-14. Lastly, Plaintiffs served Defendant with notice of this Motion on June 9, 2017. Proof of Service, ECF No. 31.

### 3. Eitel Factors

The Eitel factors weigh in favor of Plaintiffs because they have sufficiently set forth "(1) the possibility of prejudice to plaintiffs; (2) the merits of plaintiffs' substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendants' default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits." Eitel, 782 F.2d at 1471-72.

#### a. *Risk of Prejudice to Plaintiffs*

The first Eitel factor considers whether a plaintiff will suffer prejudice if default judgment is not entered. Vogel, 992 F. Supp. 2d at 1007. Given Defendant's refusal to pay the sums due, Plaintiffs will suffer prejudice because they "will likely be without other recourse for recovery" if default

11

judgment is not entered.  Accord PepsiCo, Inc. v. Cal.
Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002);
Bd. of Trs. v. Kym Mech., No. C 09-05944 RS, 2010 WL
3749409, at *3 (N.D. Cal. Sept. 23, 2010)(ERISA
fiduciaries would risk prejudice absent entry of
default judgment because they could only recoup unpaid
damages and interest through the trust plans, which
were breached).  This factor favors entry of default
judgment.

> b.  *Sufficiency of the Complaint and*
> *Likelihood of Success on the Merits*

The second and third Eitel factors consider the
merits of the plaintiff's substantive claims and the
sufficiency of the complaint.  "Under an [Eitel]
analysis, [these factors] are often analyzed together."
Dr. JKL Ltd. v. HPC IT Educ. Ctr., 749 F. Supp. 2d
1038, 1048 (N.D. Cal. 2010).

As a threshold matter, Plaintiffs have standing to
enforce LMRA § 301(a)(29 U.S.C. § 185(a))[4] and ERISA §
515 (29 U.S.C. § 1145).  LMRA section 301 allows third
party beneficiaries to enforce an employer-labor
organization agreement.  See Audit Servs., Inc. v.
Rolfson, 641 F.2d 757, 760 (9th Cir. 1981).

---

[4] "Suits for violation of contracts between an employer and
a labor organization representing employees in an industry
affecting commerce as defined in this chapter, or between any
such labor organizations, may be brought in any district court of
the United States having jurisdiction of the parties, without
respect to the amount in controversy or without regard to the
citizenship of the parties."

Additionally, Plaintiffs have standing to assert their claims under ERISA.  See <u>Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.</u>, 484 U.S. 539, 547 (1988)("The liability created by [ERISA] § 515 may be enforced by the trustees of a plan by bringing an action in federal court").  Thus, Plaintiffs are entitled to enforce the Trust Agreements against Defendant.

Plaintiffs' Action is also timely under the relevant statute of limitations.  ERISA actions where a fiduciary seeks to recover unpaid contributions to a plan will borrow the forum state's statute of limitations for breach of contract claims.  Here, the applicable statute of limitations for breach of contract under California law is four years.  <u>N.W. Adm'rs, Inc. v. Ad Auto. Distribs. Inc.</u>, No. C-05-2880 SC, 2006 WL 1626940, at *3 (N.D. Cal. June 12, 2006).  The statute of limitations begins to run "when a plaintiff knows or has reason to know of the injury . . . ."  <u>Id.</u> at *4 (citation omitted).  Plaintiffs knew or had reason to know of Defendant's breach after completing the August 17, 2012 audit.  Tashchyan Decl. ¶¶ 9-10.  Thus, the Action was timely filed within four years by July 18, 2016 [1].  <u>Id.</u> (complaint was filed within four years of the audit that had revealed unpaid pension contributions).

Moreover, Plaintiffs have pled meritorious claims for (1) violation of the Agreements and Trust

Agreements; and (2) violation of ERISA § 515 (29 U.S.C. § 1145).

i. *Breach of Trust Agreements*

Defendant has violated the Trust Agreements. The Trust Agreements obligated Defendant, as an employer, to pay contributions to the Plans for employees, to prepare a single, combined weekly remittance report, and to pay associated fees for delinquent payments. Tashchyan Decl. ¶¶ 8A-F. The Trust Agreements also require the employer to bear the costs of any audit or inspection that discloses a "delinquency underpayment, or other erroneous reporting." Tashchyan Decl. ¶ 8C; Ex. 5, p. 39; Ex. 6, pp. 45-46; Ex. 7, p. 52. Defendant breached these terms when the audit revealed it had failed to report and pay contributions from January 4, 2004 to April 5, 2008, totaling $12,066.19. Compl. ¶¶ 15, 16. Defendant committed a further breach by failing to pay for the $6,255.00 audit. <u>See</u> <u>id.</u> at ¶ 17. Plaintiffs have sufficiently alleged a contractual obligation to make contributions, to finance the audit, and a subsequent breach.

ii. *Violation of ERISA § 515*

Plaintiffs have also stated a claim for violation of ERISA § 515 (29 U.S.C. § 1145). Section 515 allows plan fiduciaries to enforce obligations created under a collective bargaining agreement against employers who fail to make contributions to employee benefit plans. 29 U.S.C. § 1145; <u>Bd. of Tr. of U.A. v. RT/DT, Inc.</u>,

14

No. C 12-05111 JSW, 2013 WL 2237871, at *4 (N.D. Cal. May 21, 2013).  To successfully assert this claim, Plaintiffs must prove:  (1) the Trusts are multi-employer plans; (2) the collective bargaining agreement obligated Defendant to make employee benefit contributions; and (3) Defendant failed to make the contribution payments.  Id.

These requirements are satisfied.  Here, the Plans are "multi-employer plans" falling within ERISA § 3(37)(A)(29 U.S.C. § 1002(37)(A)).  Compl. ¶ 4.  Also, the Trust Agreements obligated Defendant to make contributions for total hours worked by or guaranteed to all employees covered by the agreements by the last day of the week following the week in which work was performed.  Id. at ¶ 12; Tashchyan Decl. ¶ 8A.  Lastly, as the audit revealed, Defendant failed to make the requisite contribution payments between January 4, 2004 and April 5, 2008.  Compl. ¶¶ 15-16; Tashchyan Decl. ¶ 9, Ex. 8.  To date, Defendant has also failed to pay liquidated damages, interest, and audit fees.  Compl. ¶ 23; Tashchyan Decl. ¶ 13.  Thus, Plaintiffs have stated a meritorious ERISA § 515 claim.

c.  *Sum of Money at Stake in the Action*

"Under the [fourth] Eitel factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, 238 F. Supp. 2d at 1176.  "While the allegations in a complaint are taken to be true for the purposes of

15

default judgment, courts must make specific findings of fact in assessing damages." <u>Moroccanoil, Inc. v. Allstate Beauty Prod., Inc.</u>, 847 F. Supp. 2d 1197, 1202 (C.D. Cal. 2012).

Plaintiffs request $12,066.19 for contributions owed between January 4, 2004 and April 5, 2008; $14,459.91 for interest accrued through May 31, 2017; $14,459.91 for liquidated damages accumulated through May 31, 2017; audit fees of $6,255.00 for the August 17, 2012 audit; $8,757.50 for attorneys' fees; and $825.50 for litigation costs, totaling $56,824.01. Ntc. 2:1-8.

These amounts are all authorized under the Trust Agreements, which require weekly contributions to the Plans, 1% monthly interest on unpaid contributions, liquidated damages on top of the interest, costs of an audit that revealed a delinquency, attorneys' fees for enforcing the Trust Agreements, and related litigation costs. Tashchyan Decl. ¶¶ 8A-F. Plaintiffs' evidence substantiates the requested $56,824.01 total, rendering the sum of money at stake "appropriately tailored to [Defendant's] specific misconduct in failing to make timely contribution payments." <u>RT/DT, Inc.</u>, 2013 WL 2237871, at *5. Lastly, the remedies set forth in the Trust Agreements are also authorized by ERISA § 502(g)(2) (29 U.S.C. § 1132(g)(2)), which require a delinquent employer to pay for unpaid contributions, liquidated damages, interest at the rate of 1% per

16

month, auditors fees, relevant attorneys' fees, and litigation costs. As such, the sum of money at stake is appropriate and counsels towards entering default judgment.

> d. *Possibility of Dispute Concerning a Material Fact*

The fifth <u>Eitel</u> factor examines the likelihood of a dispute between the parties regarding the material facts surrounding the case. A defendant is "deemed to have admitted all well-pleaded factual allegations" in the Complaint upon entry of default. <u>DirecTV, Inc. v. Hoa Huynh</u>, 503 F.3d 847, 851 (9th Cir. 2007).

Defendant has had sufficient time to oppose this Motion since its filing on June 9, 2017 and the deadline for filing an opposition in accordance with Local Rule 7-9 has passed. Beyond arguing in its Motion to Set Aside Default Judgment that it had a meritorious defense under the applicable statute of limitations [21-1], which the Court has disposed of in <u>supra</u> Part II.B.3.b.ii, Defendant has not effectively challenged whether it violated the Trust Agreements and ERISA § 515 (29 U.S.C. § 1145). Considering this with the fact that ERISA § 502(g)(2)(29 U.S.C. § 1132(g)(2)) and the Trust Agreements are clear as to both parties' obligations in the event of a breach of the collective bargaining agreements, the Court finds that any material factual disputes are unlikely and this factor weighs towards granting the motion for default

judgment.

e. *Possibility of Excusable Neglect*

This factor examines whether Defendant's failure to respond to Plaintiffs' Complaint was the result of excusable neglect. Eitel, 782 F.2d at 1472. As explained in the Court's Order Denying Defendant's Motion to Set Aside Default Judgment, Defendant did not act with excusable neglect, as it had at least constructive notice of the Action's pending filing after it received a letter informing it of the unpaid contributions and advising it that Plaintiffs would file the attached Complaint but never responded. Order re Mot. to Set Aside Default J. 7:20-8:8, ECF No. 29. Because of Defendant's incorrectly listed addresses (particularly those it no longer occupied) and incorrectly listed agent for service of process, it took Plaintiffs nearly five months to properly serve Defendant. Defendant's apparent bad faith tactics and its contribution to litigation delays make any potential excusable neglect minimal. Thus, this factor weighs towards entry of default judgment.

f. *Policy Favoring Deciding a Case on the Merits*

The Ninth Circuit stated that "[c]ases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, "this preference, standing alone, is not dispositive." PepsiCo, 238 F. Supp. 2d at 1177. Because Defendant

has failed to participate meaningfully in this
litigation and has delayed a resolution on the merits,
a decision on the merits is not "reasonably possible"
at this juncture. Nevertheless, this factor weighs
against granting default judgment.

Six of the seven <u>Eitel</u> factors weigh in favor of
granting default judgment, and the Court enters default
judgment accordingly.

4. <u>Character and Amount of Plaintiffs' Recovery</u>

The Court now turns to Plaintiffs' requested
damages.

a. *Unpaid Contributions*

Plaintiffs seek unpaid contributions from January
4, 2004 to April 4, 2008, totaling $12,066.19. To
corroborate the requested amount, Plaintiffs attach the
Declaration of Chris Tashchyan, the Plans' Manager of
Audit and Collections. Tashchyan Decl. ¶ 1. Mr.
Tashchyan oversees collection of contributions to the
Plans. <u>Id.</u> at ¶ 2. The Tashchyan Declaration and
attached exhibits thoroughly document the Plan sections
permitting recovery of delinquent contributions. <u>Id.</u>
at ¶ 8A. Plaintiffs also provide a spreadsheet from
the audit report detailing how they arrived at the
$12,066.19 total by listing employees for whom
contributions were not reported or were underreported,
calculating their hourly contribution rates, and
calculating the period of time for which contributions
are owed for each employee for the requisite timeframe.

_Id._ at ¶ 10, Ex. 8; <u>AD Automotive Distributors</u>, 2006 WL
1626940, at *4-5 (awarding requested unpaid
contributions after plaintiff attached audit billing
report that summarized contributions owed to the trust
fund during relevant window).

   b. _Liquidated Damages & Interest_

 Plaintiffs seek liquidated damages totaling
$14,459.91.  The Ninth Circuit has clearly stated that
an award of liquidated damages under ERISA §
502(g)(2)(29 U.S.C. § 1132(g)(2)) is "mandatory and not
discretionary."  <u>Operating Eng'rs. Pension Trust v.
Beck Eng'g. & Surveying Co.</u>, 746 F.2d 557, 569 (9th
Cir. 1984).  A plaintiff is entitled to a mandatory
liquidated damages award under § 1132(g)(2) if the
following requirements are met: (1) the fiduciary
obtains a judgment in favor of the plan; (2) unpaid
contributions exist at the time of the suit; and (3)
the plan provides for liquidated damages.  <u>Idaho
Plumbers & Pipefitters Health & Welfare Fund v. United
Mech. Contractors, Inc.</u>, 875 F.2d 212, 215 (9th Cir.
1989).

 As set forth in <u>supra</u> Part II.B.3.b.i., the Trust
Agreements were violated, unpaid contributions were
owed when this Action was filed in July 2016, and, in
accordance with section 1132(g)(2), the Plans provide
for liquidated damages equal to the greater of: (1)
twenty percent (20%) of the amount of contributions
due; (2) or the amount of interest due on the date when

payment is made.  Tashchyan Decl. Ex. 5, at 36-37; Ex.
6, at p. 36; Ex. 7, at pp. 49-50.  The Plans also
provide that liquidated damages shall be in addition to
the interest due on the unpaid contributions.  <u>Id.</u>  The
Court finds that the $14,459.91, which equals the
requested interest and is greater than 20% of the
$12,066.19 in unpaid contributions, is the appropriate
amount due when payment had not been made as of May 31,
2017.

Plaintiffs also seek interest of $14,459.91 on
unpaid contributions.  "Under ERISA, Plaintiffs may
recover interest based on the rate set by the employee
benefit plan."  <u>AD Automotive Distributors</u>, 2006 WL
1626940, at *5 (citing 29 U.S.C. § 1132(g)(2)(C)(i)).
Here, the Plans allow for interest "charged on the
amount of such [unpaid] contributions from the date
when payment was due to the date when payment was
made," at the interest rate of 1% per month.  Tashchyan
Decl. ¶ 8E; Ex. 5, p. 36; Ex. 6, p. 42; Ex. 7, p. 49.
Moreover, the $14,459.91 in interest—equal to the
requested $14,459.91 in liquidated damages—is
permitted, as "[i]t is proper to award both liquidated
damages and interest if so provided in the agreement."
<u>AD Automotive Distributors</u>, 2006 WL 1626940, at *5.
And here, the Plans provide that interest "shall be in
addition to any liquidated damages. . . ."  Tashchyan
Decl. Ex. 5, pp. 36-37; Ex. 6, p. 36; Ex. 7, pp. 49-50.
Thus, interest is proper.

1

      c. *Audit Fees*

2    Plaintiffs are entitled to the requested audit

3 fees, totaling $6,255.00, ntc. 2:5, as ERISA section

4 515 permits a plaintiff to recover audit costs. <u>Tr. of</u>

5 <u>S. Cal. IBEW-NECA Pension Plan v. Gonzalez Elec., Inc.</u>,

6 CV 07-01044 MMM (Shx), 2008 WL 11336220, at *5 (C.D.

7 Cal. Sept. 30, 2008)(citing <u>Operating Eng'rs Pension</u>

8 <u>Trust v. A-C Co.</u>, 859 F.2d 1336, 1343 (9th Cir. 1988)).

9      d. *Attorneys' Fees and Litigation Costs*

10    Plaintiffs seek attorneys' fees totaling $8,757.50

11 and costs of suit, totaling $825.50. Central District

12 Local Rule 55-3 delineates a schedule of attorneys'

13 fees in the event of default judgment, if the

14 applicable statute provides for recovery of reasonable

15 attorneys' fees.[5] <u>Vogel</u>, 992 F. Supp. 2d at 1016.

16    Per Local Rule 55-3, "[a]n attorney claiming a fee

17 in excess of this schedule may file a written request

18 at the time of entry of the default judgment to have

19 the attorney's fee fixed by the Court. The Court shall

20 hear the request and render judgment for such fee as

21 the Court may deem reasonable." Plaintiffs seek a

22 departure from Local Rule 55-3 and ask for $8,757.50 in

23 attorneys' fees. Ntc. 2:6.

24    Attorneys' fees under ERISA § 502(g)(1)(29 U.S.C.

25 1132(g)(1)) "are calculated using the lodestar

26

27    [5] Here, the applicable statute, ERISA § 502(g)(2)(29 U.S.C.
§ (g)(2)), allows for "reasonable attorneys' fees," rendering
28 Local Rule 55-3 applicable.

approach, which multipl[ies] the number of hours reasonably expended by the attorney(s) on the litigation by a reasonable hourly rate." McElwaine v. U.S. W., Inc., 176 F.3d 1167, 1173 (9th Cir. 1999). Then, the Court must determine if for any reason the lodestar figure should be adjusted. Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Daque, 505 U.S. 557 (1992).[6]

To determine whether the hourly rates are reasonable, the Court can consider whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Tr. of the S. Cal. IBEW-NECA Pension Plan et al. v. Electro Dynamic Servs., CV 07-05691 MMM (PLAx), 2008 WL 11338230, at *5 (C.D. Cal. Oct. 14, 2008)(citing Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984)). The "relevant community" here is the Central

---

[6] In Kerr, the Ninth Circuit found the following factors important in determining whether attorney's fees are reasonable: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Id.

District.

Plaintiffs submit a declaration by Elizabeth Rosenfeld that states that hourly rates for Plaintiffs' counsel are $250/hour and $100/hour for legal assistants. Decl. of Elizabeth Rosenfeld ("Rosenfeld Decl.") ¶ 10, Ex. 9, ECF No. 30-11. Ms. Rosenfeld shows that her skill, experience, reputation, and the complexity of ERISA litigation justify the hourly rate. She has been admitted to practice in California since 1982, nearly 35 years, and she has focused on ERISA litigation for at least 21 of those years, at one point handling over 50 ERISA litigation matters in any given year. Id. at ¶¶ 8-9. "In the context of a default judgment, the single declaration of plaintiffs' attorney is sufficient to support an award of attorneys fees." Electro Dynamic Services, 2008 WL 11338230, at *5. Even so, the $250 hourly rate is on par with prevailing rates in the community and is thus reasonable. Saks v. Int'l Longshore & Warehouse Union-Pac. Maritime Ass'n Benefit Plans, LA CV09-02885 JAK (Ex), 2013 WL 12170494, at *13 (C.D. Cal. Nov. 15, 2013)(reduced rates ranging from $250 to $535 per hour for ERISA litigators with 30 years of experience were reasonable); Tr. of the S. Cal. IBEW-NECA Pension Plan et al. v. Niteowl Commc'ns., NO. CV 08-03621 SJO (PJWx), 2008 WL 11338652, at *6 (C.D. Cal. Dec. 5, 2008)(concluding that hourly rates ranging from $160/hour to $250/hour for attorneys and $90/hour for

paralegals were reasonable particularly considering declaration that $200-$350/hour is reasonable range for multi-employer trust fund cases); Cf. Bd. of Tr. v. N. Coast Contracting, Inc., No. 08-3577 SC, 2008 WL 5170714, at *3 (N.D. Cal. Dec. 9, 2008)(hourly rate of $250 was reasonable for attorney with 22 years experience specializing in ERISA cases).

A district court has "wide latitude in determining the number of hours that were reasonably expended by the prevailing lawyers." Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001). The fee applicant "bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of hours worked." Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992).

The number of hours performed is reasonable. Plaintiffs seek 6.3 hours performed by legal assistants, at the rate of $100.00/hour, totaling $630 and 29.51 hours performed by attorneys, at the rate of $250.00/hour, totaling $7,377.50. Plaintiffs seek an additional three hours of preparation for the hearing on this Motion, totaling $750.00, which brings the total requested attorneys' fees to $8,757.50. Rosenfeld Decl. ¶ 11. Deducting the $750.00,[7] counsel billed $8,007.50. Between April 26, 2016 and June 8,

_____

[7] Because this matter was taken under submission and no hearing was held on this Motion, the Court deducts the additional three hours and $750.00 requested, bringing the total to 35.81 hours spent on the matter for a total of $7,377.50.

2017, counsel spent 35.81 hours on the litigation, including filing the Complaint, serving the summons and Complaint, responding to the Motion to Set Aside Default, and filing the instant Motion for Default Judgment. Id. at Ex. 9. The attached record details the specific tasks and work completed by the attorneys and the legal assistants and does not suggest duplicate hours or hours that are otherwise excessive or unnecessary. Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986); NiteOwl Communications, 2008 WL 11338652, at *6 ("drafting complaint, obtaining entry of default, and drafting the Motion for Default Judgment were reasonable and appropriately divided between paralegals and attorneys of differing experience levels"). Thus, the Court finds that $8,007.50 is a reasonable attorneys' fees award.

Finally, the Court must look to the Kerr factors in determining whether the lodestar figure is reasonable and if it should be adjusted. 526 F.2d at 70. When looking at the totality of the circumstances, none of the Kerr factors necessitate that the Court adjust the lodestar figure. ERISA litigation is a particularized field that requires specialized skills to perform the legal services, Ms. Rosenfeld has significant experience in a specialized area, and Plaintiffs' counsel repeatedly represent these specific Plaintiffs in this type of litigation.

Plaintiffs lastly seek $825.50 in litigation costs,

including: (1) 400.00 in District Court filing fees;
$133.50 for service of process; and (3) $292.00
expended in attempting to serve Defendant at its
previous business locations and on its previously
registered agent for service of process.  ECF Nos. 1,
18; Rosenfeld Decl. ¶ 12, Ex. 10.  Per ERISA §
502(g)(2)(D)(28 U.S.C. § 1132(g)(2)(D), the Court may
award reasonable litigation costs, and Local Rule 54-3
includes filing fees and fees for service of process in
costs awarded.  L.R. 54-3.  Thus, the Court awards
$825.50 in costs to Plaintiffs.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS**
Plaintiffs' Motion for Default Judgment as to all
claims and enters judgment in favor of Plaintiffs [30].
The Court awards the following damages: $12,066.19 in
delinquent contributions; $14,459.91 in liquidated
damages; $6,255.00 in audit fees; $8,007.50 in
attorneys' fees; and $825.50 in litigation costs; plus
interest, at the rate of one percent (1%) per month,
commencing when payment was due beginning on April 5,
2008, and continuing until payment is made.

**IT IS SO ORDERED.**

DATED: August 11, 2017       s/ RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge